at all. Give us one second. All right. Mr. How do you pronounce your name? Hausch, Your Honor. Okay, Mr. Hausch, you may proceed. You're reserved two minutes for rebuttal. Yes, sir. Thank you, Your Honor. Counsel, this is a unique case which requires this court to interpret congressional intent when it amended the Americans with Disabilities Act in 2008. In doing so, Congress sought to focus implementation of the statute on whether or not there was actual Well, why is being shorter than average a disability? Your Honor, it is a disability in this particular case because it affects my client's life in her ability to live everyday life activities as defined by the EEOC. But where does it say any of that in the complaint? It is alleged in page 10 of the complaint, Your Honor. It is, I would point out, in paragraph 10 it reads, That's just a bare-bones statement of the standard, right? That's correct. And that's what the lower court found, that it was insufficient. If this Court agrees with the district court, I would respectfully argue that the appropriate remedy would be for remand and to allow the plaintiff to replead. And yet there was no request in the briefing for leave to amend if the Court found That is correct, Your Honor. There was a, this Court struck our amended appendix, which did include an amended complaint. Under these circumstances, Your Honor, I believe Rule 15 and the rule that this Court should, or that the lower court should grant freely, freely grant leave to replead would be appropriate, and substantial justice would apply in this particular case. And, sir, after, oh, I beg your pardon. Would taller than average be a disability? Your Honor. Would all the, all our people, NBA players disabled, seven-footers? Your Honor, I can answer that question by respectfully suggesting to this Court that when the, in 2008 when Congress included, when it amended the ADA, it intended to include virtually all muscular physical conditions. The question as to whether or not a particular physical condition can be subject to discrimination. Is Andrew Grant disabled? Well, he's not playing. No. He's off the injured reserve. That was a bad example. When he comes off the injured reserve list, is he going to, he's 7'1", is he disabled? It would be very difficult to characterize one of the NBA's finest athletes as disabled, Your Honor. I understand the Court's concern. He might have the same trouble working the machinery that your client did for a different reason, that he's too tall. That is the analysis that I believe that the Congress wanted this, the lower courts to analyze. If Kevin Durant, despite not having any physical disabilities per se, was unable to operate a particular instrument in his, in his employment, thus seriously affecting a major life activity, I believe that it's certainly plausible that he could be declared as some, and he was discriminated against. So then being left-handed would also be a disability that would entitle you to a reasonable accommodation? With all due respect, Your Honor, the, I would simply suggest that that was the intent of the 2008 amendments, to not focus so much on the status of the plaintiff as a grieved party or as a minority, but rather or not, they did in fact suffer discrimination. Any disability could be taken to, reduced to absurdity, to such a degree as this Court has suggested. I'm overweight for my height. Could I be disabled? It's possible that people who are, that weight could be a disability under the amended statute, if in fact it affects a major life activity, and if in fact they suffer discrimination as a result of it. The issue is not whether or not an individual's physical stature or physical characteristics per se place them in a, in a grieved category. It's whether or not, in other words, the result of that was discrimination in this case on the job. And I would point out, and I think it's important to note that in this particular case, there was clear discrimination. My client asked for a reasonable accommodation. She said the — Well, let's not talk about that. I mean, what was the reasonable accommodation she asked for? She asked for help using the fluoroscope. Is that, I mean, that's a reasonable accommodation? I need help? Is that's, I mean, generally a reasonable accommodation is a request for I need a specific thing that will enable me to do this job? To just say help is not generally considered a request for an accommodation, is it? I would — I can't answer to this Court whether or not it's generally considered that. I would respectfully request that it is. I need help doing this. I need another assistant because I can't reach the top of this instrument safely, so could you please have someone come in and help me do that? I think that is certainly the plain meaning of an accommodation. I would respectfully suggest that. Secondly, I would point out, Your Honor, that what you're — what you're suggesting is an interpretation of fact, not an interpretation of law. It's certainly quite plausible that at the end of discovery, after Mr. Zuffineri has no doubt ably collected all of the documents and deposed all of the — all of the appropriate individuals, it could be at that point that as a matter of law my client has not proven what you have suggested, that she didn't sufficiently request an accommodation. I'm just looking at the pleadings. All the pleadings say is that she said she needed help, and then basically there was an agreement that she wouldn't have to work a particular machine, right? Yes. And so what was the requested accommodation that would be reasonable, according to the complaint? Paragraph 28. During the training, plaintiff's instructor, Ashley Kingston — Your Honor, I'm at page 9 of the appendix — refused to help plaintiff with the exam despite the fact that it was apparent the plaintiff was struggling with the machine due to her height limitations. Paragraph 30. During this meeting, plaintiff requested a reasonable accommodation of assistance in operating the fluoroscope because of her height limitations. Paragraph 31. Plaintiff described how she was concerned for her patient's safety when she operated this machine because she was unable to see or reach the controls or maneuver the equipment safely. If within that context it is determined, as the district court did, that this was insufficiently pleaded, there needed to be more information in order for the court to make the threshold determination that it was adequately pleaded, again, I would respectfully request, especially under these circumstances, given Rule 15's demand that leave to replete be given freely and that it is in the interest of justice, especially since this is a unique case, perhaps a case to first impression, that my client be given the opportunity to do that. I know, sir, that you didn't ask for it in connection with the motion, but after the motion was decided and prior to filing the notice of appeal, was there ever an effort undertaken post-decision to allow for repleting, either under Rule 59 or some other way? Did anyone — in other words, did anyone ask before your brief was submitted? I realize that I'm out of time, Your Honor. I can answer the question. No. There was a — the — what I did in this particular case, because the time between the court's determination and the closing of the case was I found a particular case where this court had previously suggested that an amended complaint should have been included in the appendix, which I attempted to do, but as this Court is well aware, it was struck. So the answer to your question is no. Thank you, sir. All right. So you reserved two minutes. Yes, sir. Your adversary, Mr. Zuffranieri? Yes, Your Honor. Did I say that right? You did. Oh, okay. Ben Zuffranieri from Hudson-Russ on behalf of Winsong Radiology and Karen Blatto. I'll be very brief. Judge Parker's decision in Francis v. City of Meridian makes clear that a physical characteristic like short stature or in that case obesity in and of itself is not a disability unless it is a product of a physiological disorder or condition. And my opponent has identified the ADAA amendments as suggesting that that 2008 amendment changed that standard. And I would call the Court's attention to both the Morris case, which is cited in our brief, which discusses at length the amendments, the 2008 amendments, and adopts both the analysis and the rationale of Judge Parker in holding that the analysis of whether a physical characteristic alone is a disability. Subsequent to the filing of our brief, the Seventh Circuit also reached the same conclusion. So the case is not cited in our brief, but Richardson v. Chicago Transit Authority adopted the same analysis and rationale that was contained in the Francis opinion. And the language in the Francis opinion said it would be inconsistent with the statutory purposes to construe the ADAA to reach the alleged discrimination by an employer on the basis of a simple physical characteristic such as weight, in this case such as height. But, look, you would concede that there are some people who are of such a height that they would be greatly disadvantaged and that would be a disability. Wouldn't you agree? I mean, someone who is suffering from dwarfism, if that's what it's still called, I'm not even sure. You know, I'm not sufficiently familiar with that condition, but I believe that dwarfism might be a product of an impairment of some sort. But let's take it to this case. Orfoot 5. Orfoot 5. Andrea Mori worked 12 years at Winsong Radiology, never claimed to be disabled, never requested any accommodation. This record contains no evidence that she has a qualifying disability. You may be right. One of the things that puzzled me was this was a motion to dismiss, and yet there were all sorts of declarations and affidavits and attachments to the briefing, which puzzled me. Yes, there was, Your Honor, and none of which was relied on by the district court. It was submitted for the court. When you say this record, you're just referring to this record. I'm referring just to the complaint. The complaint acknowledges that she started working for Winsong Radiology in January of 2003 and that the first time there was ever a complaint of any nature regarding her height was when she began training or, excuse me, when she began operating the fluoroscope for HSG exams 12 years later. But it seems to me that that actually begs the question, because it suggests that she was able to perform the essential functions of her job until she was transferred to another Winsong facility that had a different machine that she had difficulty maneuvering. So I guess I'm just wondering if it says too much for you to say that asking for assistance is not a reasonable accommodation or that using the fluoroscope was an essential job function because she was able to work for 12 years at other facilities that didn't have it. Well, you know, and I would call your attention to the allegations she made in the complaint that she was provided a stepstool affixed to a platform and that she found that sufficient to operate the fluoroscope and that she never complained that the platform and the stepstool was insufficient except with regard to the performance of a single exam using that machine. And respectfully, I do not believe that a disability can be found simply on the basis that there is a single task that I'm incapable of doing without asking other people to do it. I can't dunk a basketball, but I don't believe I'm disabled. And in this case, her complaint acknowledges, I advised Winsong that in operating the fluoroscope, I felt I needed assistance. And they provided me the stepstool and the platform, and the complaint says, and I never complained. But the complaint also says that that was fine until she had to do the HSG examinations and then it became impracticable. Yeah, and she said that the problem was that I couldn't see the controls. That's what the complaint says. Respectfully, the request that somebody else do that job, I don't think was a reasonable request for an accommodation. Judge Scrutiny said that performing the, excuse me, using the fluoroscope was an essential job function. How can you say that from the complaint? Well, Your Honor, normally that, I believe, is a fact inquiry, is something an essential job function. And in this case, it's unchallenged. There's no attack. Does the complaint say that this is an essential part of her job? Does it say how much time she spends doing the HSG as opposed to other things? Yeah, the complaint said that she was trained on this machine for two weeks and that when she was at the Williamsville location, she did perform exams using the fluoroscope. The complaint doesn't lay out much greater detail beyond that. But assuming you're correct, Your Honor, and certainly the law, the case law indicates that determining essential job function is a fact issue, it's unchallenged on appeal. There's not a word in the briefs or in any of the arguments that that was disputed. And so from my perspective, I believe it's waived. Did you get to the retaliation claim? Because it is the case, as a general matter, that even though one may not have an ADA claim or a discrimination claim, that they could still have a retaliation claim as long as they have a good faith belief that they made a complaint or a request for accommodation and they were retaliated against for it. Yeah, Your Honor, I would. I think my position, and I believe the district's court's view below, was the complaint did not allege sufficient facts leading to a plausible inference that the retaliation was the but-for cause of the employer's adverse action. Ms. Morey's complaint says in January or February, I asked for other people to do the HSG exams. And she was ultimately terminated in April, some three or four months later, depending if it was January or February. And, you know, our position is, and the judge below held, there was no direct evidence of retaliatory animus in that the passage of three or four months was insufficient to raise a plausible inference that the determination to let her go was in response, was the but-for response for requesting, I don't want to do this work. Sure, but she's there with the company for 12 years. She moves to the different facility. She asks in January for this accommodation of assistance. They say, no, don't worry about it, just don't do these. And then two to three months later, she's fired for not doing these. That seems, and there's no causal connection there? Well, certainly, you know, my view is the inference that the termination was as a result of a request for an accommodation. I don't think that inference should be drawn. The termination notice reflected other things as well. But, yes, you're right, Your Honor, it does reflect also refusal to perform an exam, right? That's one of the things that's mentioned. But, you know, let me offer an example. So I'm a 61-year-old lawyer. I feel my energy level isn't what it should be. I don't have the greatest cardiovascular functioning that perhaps I would like or that I should. And I say to my law firm, I'm an employee, and I say, you know, I really need a reasonable accommodation. This hour standard is insufficient. And, you know, I don't think I should be required to meet it, whatever it is, 2,000 hours, 1,800 hours. And I start working less. And four months later, the firm says, wait a minute, you're not disabled. You don't have a disability. And they say, this isn't working, and they let me go. Is that sufficient to give rise to a claim that I was retaliated for requesting for an accommodation when I'm not disabled? Maybe not after summary judgment and development of discovery, but on the pleadings I have here, we have here. That's the question. You know what? You're over time. Okay. Thank you. Yes, sir. There was only one complaint in this case, right? Yes. No request for leave to file an amended complaint. Would you or your client be prejudiced at this point? We would. We filed a motion, and that motion was pending for 13 months. The standard is abuse of discretion if it's asked for. If somebody asks for leave to amend, the standard's abuse of discretion. It would be unfair to my client, and frankly, it would be unreasonable to impose on district judges the requirement to say, hmm, I'm going to grant leave to amend even though it wasn't asked for. There was a tactical decision made. We're going to ride on this complaint. And so I don't think it's an abuse of discretion. And if abuse of discretion means anything, even when it's asked for, the cases from this circuit say, if somebody's concluding paragraph says, deny the motion to dismiss and alternatively grant me leave to amend, if that's all it says, the cases that this Court says, not an abuse of discretion to refuse amendment, in the circumstance where it's not asked, I can't believe it would be appropriate for that to be the rule. Okay. Thank you. Thank you very much, Mr. Zuffineri. You've got two minutes, Mr. Hutch. Thank you, Your Honor. I would simply note that the Court asked Mr. Zuffineri would he be prejudiced, and he answered whether or not it would be an abuse of discretion. I don't believe that there would be any prejudice. And the fact that it took 13 months for the Court to reach a decision is just simply what happened. It prejudiced no one. So I recognize, as I must, that I neglected to make that request in my affidavit. But again, I will simply refer to Rule 15's freely given and interests of justice. Further, Your Honor, I just want to comment on the colloquy that you had with Mr. Zuffineri. It dealt substantially with the facts of the case. Mr. Zuffineri claimed that there was no direct evidence of retaliatory animus. Well, there was no evidence of it because there's no evidence in this case. I think everybody understands we're talking about the four corners of the complaint. But I guess one question I have for you is, are you arguing that the working the HSG machine was an essential function? Yes. So you're conceding that it is an essential function? Yes.  I have nothing further, Your Honor, unless the — and I would — one final note. The determination to dismiss on this case was based on legal precedent, which goes to summary judgment rather than dismissal on the pleadings. I would just simply suggest that this is a case which deserves to be, for the defendant — I'm sorry, for the plaintiff to be given the opportunity to replead. This is an issue of first impression. And Mr. Zuffineri — and I would respectfully suggest that at least 2,500 hours at Hodgson Russ, which is Buffalo's best law firm, that he be — she be given the opportunity to replead, at which time he'll have another fulsome opportunity to move to dismiss. Mr. Zuffineri, before you sit down, what specifically is the issue that you describe as one of first impression? Whether or not height can be regarded as a disability pursuant to the 2008 amendments of the Americans with Disabilities Act. Height alone. Yes, height alone. That's the only — that's the only — and it's my position that the amended Americans with Disabilities Act — Height alone is a disability. I'm sorry? It is your position that height alone is a disability. Correct? I'm not making that categorical determination, Your Honor. What I'm suggesting is that my client's height in this — That's what you just said. That's what I asked you, and you said yes. I'm sorry if I misspoke, Your Honor. Please help me understand. What I mean to say is that my client's diminished stature, her height in this particular case, was the subject of discrimination. She was discriminated against because of her height. Therefore, as the revised 2008 amendments to the ADA, they have asked that the courts focus on whether or not there was discrimination based on — No, it's about whether this is a disability that's protected under the ADA. I can discriminate on the basis of height all the time. If I only want six-foot people, I guess I can do that, right? I don't do that. Your Honor, I certainly believe that there is no per se bar to height as a disability in the amended Americans with Disabilities Act. Then what's your claim? My claim is that she was — There's no bar in the amended act. — that she was discriminated against because of her height. The discrimination is clear. You said there was no per se bar. There's no per se bar to having height as a category of discrimination. All right. Thank you. Okay. Thank you, Your Honor. Thank you both. We will reserve decision.